*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* PETITION OF BERRIEN COUNTY
TREASURER FOR FORECLOSURE.

---

BERRIEN COUNTY TREASURER,

                Petitioner-Appellant,

v

RONALD BERTRAND ARENT II, EILEEN H
GLOBENSKY CHILDREN'S TRUST, MARY
ANNE HEINZE ROMANO CHILDREN'S TRUST,
HANORAH GLOBENSKY-BLUM, Trustee of the
MARY ELLEN HEINZA TRUST, JAMES D.
SNOW, Personal Representative of the ESTATE OF
JACKIE ELDON SNOW, JASON R. WOODFORD,
Personal Representative of the ESTATE OF DIANE
M. WOODFORD, JOEL WHETSTONE, Personal
Representative of the ESTATE OF JANE
WHETSTONE, ELIZABETH KELL, RANDY
BETTICH, Trustee of the SANDRA K. NIMTZ
LIVING TRUST, MARIE MARSHALL, Trustee of
the BENJAMIN E. MARSHALL TRUST, and
DEAN KANALOS, Personal Representative of the
ESTATE OF WILLIAM KANALOS,

                Claimants-Appellees.

UNPUBLISHED
October 10, 2024
3:09 PM

No. 366509
Berrien Circuit Court
LC No. 2020-000105-CH

---

Before: SWARTZLE, P.J., and REDFORD and FEENEY, JJ.

PER CURIAM.

-1-

In this foreclosure action, petitioner, Berrien County Treasurer, appeals by leave granted[1] the circuit court's order requiring petitioner to distribute remaining tax-foreclosure sale proceeds to claimants Ronald Bertrand Arent II; the Eileen H. Globensky Children's Trust, the Mary Anne Heinze Romano Children's Trust, and Hanorah Globensky-Blum, trustee of the Mary Ellen Heinza Trust (collectively, Globensky Trusts); James D. Snow, personal representative of the Estate of Jackie Eldon Snow (Snow Estate); Jason R. Woodford, personal representative of the Diane M. Woodford Estate (Woodford Estate); Joel Whetstone, personal representative of the Estate of Jane Whetstone (Whetstone Estate); Elizabeth Kell; Randy Bettich, trustee of the Sandra K. Nimtz Living Trust (Nimtz Trust); Marie Marshall, trustee of the Benjamin E. Marshall Trust (Marshall Trust), and Dean Kanalos, personal representative of the Estate of William Kanalos (Kanalos Estate). Petitioner also sought leave to appeal the circuit court's order denying reconsideration. On the basis of this Court's published opinion in *In re Petition of Muskegon Treasurer for Foreclosure*, ___ Mich App ___; ___ NW3d ___ (2024) (Docket No. 363764), we reverse the circuit court's order granting claimants' amended motion for the distribution of remaining proceeds and remand to the circuit court for entry of an order denying claimants' motion.

## I. BACKGROUND

### A. STATUTORY FRAMEWORK

The Michigan Supreme Court held in *Rafaeli, LLC v Oakland Co*, 505 Mich 429, 484; 952 NW2d 434 (2020), that former owners of properties sold at tax-foreclosure sales for more than what was owed in taxes, interests, penalties, and fees had "a cognizable, vested property right to the surplus proceeds resulting from the tax-foreclosure sale of their properties." This right continued to exist after fee simple title to the properties vested with the foreclosing governmental unit (FGU). The FGU's "retention and subsequent transfer of those proceeds into the county general fund amounted to a taking of plaintiffs' properties under Article 10, § 2 of [Const 1963]," and the former owners were entitled to just compensation in the form of the return of the surplus proceeds. *Id*. at 484-485. When the Court decided *Rafaeli*, the General Property Tax Act (GPTA), MCL 211.1 *et seq*., did not provide a means by which property owners could recover their surplus proceeds.

In response to *Rafaeli*, the Legislature passed 2020 PA 255 and 2020 PA 256, which were given immediate effect on December 22, 2020. These acts purported to "codify and give full effect to the right of a former holder of a legal interest in property to any remaining proceeds resulting from the foreclosure and sale of the property to satisfy delinquent real property taxes under the [GPTA] . . . ." Enacting Section 3 of 2020 PA 255; Enacting Section 3 of 2020 PA 256. At issue in the current appeal is MCL 211.78t, a provision added to the GPTA by 2020 PA 256. Section 78t

---

[1] *In re Petition of Berrien Co Treasurer*, unpublished order of the Court of Appeals, entered December 18, 2023 (Docket No. 366509).

provides the means for former owners to claim and receive any applicable "remaining proceeds"[2] from the tax-foreclosure sales of their former properties.

Under MCL 211.78t(2), property owners whose properties sold at tax-foreclosure sales after July 17, 2020, as did claimants' properties, and who intend to recover any proceeds remaining from the sale after satisfaction of delinquent taxes, interest, penalties, and fees, are required to notify the FGU of their intent by submitting Department of Treasury Form 5743 by the July 1 immediately following the effective date of the foreclosure of their properties.[3] The remainder of the process for returning remaining proceeds flows from the timely submission of Form 5743. In the January immediately following the sale or transfer of foreclosed properties, the FGU notifies those who timely filed Form 5743 about the total amount of remaining proceeds or the amount of shortfall in proceeds, among other things. MCL 211.78t(3)(i). The notice also instructs the claimants that they may file a motion in the circuit court foreclosure proceeding to recover any remaining proceeds payable to them. MCL 211.78t(3)(k). Such motion must be filed between February 1 and May 15 of the year immediately following the tax-foreclosure sale. MCL 211.78t(4).

## B. PERTINENT FACTS AND PROCEEDINGS

The material facts in this case are not disputed. Petitioner foreclosed claimants' properties, effective March 31, 2021. Before foreclosure, notice of the show-cause hearing and the judicial-foreclosure hearing was published in a local newspaper on December 16, 2020, and December 23, 2020. After foreclosure, petitioner mailed two letters to all claimants. The first letter was dated April 1, 2021. This letter informed former property owners that anyone with an interest in the foreclosed property at the time of foreclosure had a right to file a claim for remaining proceeds and that, to make a claim, the interested person "must" submit "Form 5743, Notice of Intention to Claim Interest In Foreclosure Sales Proceeds . . . to the Berrien County Treasurer NO LATER THAN JULY 1, 2021." The letter explained how to access the form, how to submit the completed form, and what would happen after the form was submitted. The second letter was dated April 14 and was for owners of parcels who contested foreclosure at the foreclosure hearing and for whom foreclosure would be effective on April 23, 2021. There is no record evidence that the foreclosure date for any of claimants' properties was April 23, 2021. Three claimants did not submit the notice of intent required by MCL 211.78t(2), and no claimant who submitted notice did so by the July 1, 2021 deadline. After the properties were sold at a tax-foreclosure sale, claimants filed a combined motion requesting distribution of the proceeds that remained after the satisfaction of their respective tax delinquencies and related costs. Petitioner opposed the motion, primarily on

---

[2] *Rafaeli* referred to "surplus proceeds," and MCL 211.78t refers to "remaining proceeds." Claimants moved to recover "remaining proceeds" in the circuit court.

[3] The Michigan Supreme Court also recently held that *Rafaeli* applies retroactively to claims not yet final on July 17, 2020, and that MCL 211.78t applies retroactively to claims arising before its enactment. *Schafer v Kent Co*, ___ Mich ___; ___ NW3d ___ (2024) (Docket Nos. 164975 and 165219).

grounds that none of the claimants complied with the July 1 deadline in MCL 211.78t(2) for submitting a notice of intention to claim an interest in remaining proceeds

After a hearing, the circuit court granted claimants' motion. The circuit court found the July 1 deadline for submitting notices of intent to be unconstitutional as applied to claimants. The court reasoned that the deadline requirement "result[ed] in the taking of [claimants'] property without due process by requiring notice to retain their vested property before such vested interest in the property even existed." The court believed that a claim for remaining proceeds did not accrue until after the tax-foreclosure sale produced a surplus and that petitioner's retention of that surplus was an unconstitutional taking. The court further believed that the post-*Rafaeli* amendments to the GPTA did not address the concerns raised in *Rafaeli* and that the GPTA continued to deny claimants their vested property rights to surplus or remaining proceeds because they failed to file a notice of intent by July 1. Nevertheless, the circuit court declined to rule that MCL 211.78t was "unconstitutional as a general matter" and limited its ruling to the application of MCL 211.78t to claimants.[4] Because the court found that MCL 211.78t as applied to claimants resulted in an unconstitutional taking, it also found that the 5% sales commission was inapplicable to claimants. The court was not persuaded that the e-mail exchanges between the parties' attorneys established "an enforceable agreement to disburse the surplus proceeds on the tax sale." Nor was the court persuaded that petitioner acquired claimants' property under circumstances that would warrant the imposition of a constructive trust. The court ordered the parties to submit proposed orders for the disbursal of remaining proceeds to individual claimants. Any disputes regarding the amounts to be paid could be the subject of a future hearing. Petitioner moved unsuccessfully for reconsideration. This appeal by leave granted followed.

## II. ANALYSIS

Petitioner contends that the circuit court erred by concluding that MCL 211.78t was unconstitutional "as applied" to claimants and by granting their motion to distribute remaining proceeds when they failed to comply with the notice requirement in MCL 211.78t(2). We agree.

We review de novo questions of constitutional law, as well as the interpretation and application of statutes. *Bonner v Brighton*, 495 Mich 209, 220-221; 848 NW2d 380 (2014).

This proceeding occurred before the publication of *Muskegon Treasurer* on October 26, 2023. This Court held in *Muskegon Treasurer*, ___ Mich App at ___; slip op at 8, that "[t]he statutory scheme set up by our Legislature . . . satisfies due process." To reach this conclusion, this Court determined what due process required under the circumstances by considering the following factors:

> "First, the private interest that will be affected by the official action; second, the
> risk of an erroneous deprivation of such interest through the procedures used, and
> the probable value, if any, of additional or substitute procedural safeguards; and

---

[4] Although the circuit court ruled that MCL 211.78t violated due process as applied to claimants, the court's ruling was really about whether the July 1 deadline for submitting a notice of intent was unconstitutional on its face.

finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." [Quoting *Mathews v Eldridge*, 424 US 319, 332, 335; 96 S Ct 893; 47 L Ed 2d 18 (1976).]

Applying these factors, this Court determined that "[t]he private interest affected by the FGU's compliance with MCL 211.78t is a former property owner's right to the proceeds remaining after the tax-foreclosure sale and the satisfaction of tax debt and associated costs." *Muskegon Treasurer*, ___ Mich App at ___; slip op at 8. This Court also determined that if the procedures in MCL 211.78t are followed, then "the risk of erroneous deprivation is nil . . . ." *Id.* The timely and otherwise proper submission of Form 5743 puts the FGU "on notice that the former owner intends to exercise the right to proceeds, and the FGU will be required to notify that person of any proceeds remaining after satisfaction of the tax delinquency as well as how to file a claim. MCL 211.78t(3)." *Id.* As for the government interest involved, this Court observed that "the FGU has an interest in having taxes paid in full as well as clarifying within a reasonable time period who has the right to any surplus from forfeited properties." *Id.* On the basis of this analysis, this Court concluded that "[t]he statutory scheme set up by our Legislature and followed by [the FGU] satisfies due process." *Id.*

In addition, this Court rejected the argument advanced by claimants and adopted by the circuit court that presale notices were inadequate because they did not specifically identify the remaining proceeds to be taken. *Id.* at ___; slip op at 9. This Court observed that this position arose from the erroneous interpretation of *Rafaeli* as holding that a former property owner's right to recover remaining proceeds only arose *after* the sale. From this interpretation stemmed the inference that only post-sale notices comported with procedural due process. Dismissing this argument, this Court recalled that *Rafaeli*, 505 Mich at 462-464, 472, traced the right to collect proceeds remaining after the tax-foreclosure sale of property back to English common law, and this Court concluded that the right to collect remaining proceeds existed before the tax-foreclosure sale, even if there was no potential for compensation until after the tax-foreclosure sale. See *Muskegon Treasurer*, ___ Mich App at ___; slip op at 9.

Like the respondents in *Muskegon Treasurer*, what claimants really wanted is a different, i.e., postsale, process. *Id.* at ___; slip op at 8. As this Court has already observed, although some states had adopted the type of process advocated by claimants, that was not the system that Michigan's Legislature adopted. "So long as the statutory scheme adopted by our Legislature comports with due process—as MCL 211.78t does—whether such a scheme makes sense or not, or whether a 'better' scheme could be devised, are policy questions for the Legislature, not legal ones for the Judiciary." *Id.* at ___; slip op at 9.

In light of *Muskegon Treasurer*, we conclude that the circuit court in the present case erred by determining that our Legislature's statutory scheme for returning remaining proceeds did not satisfy due process because it required petitioners to send notices regarding remaining proceeds to property owners before the tax-foreclosure sales. The court's erroneous due-process determination was the basis for the court's conclusion that petitioner's retention of claimants' remaining proceeds, including the 5% sales commission, was an unconstitutional taking. In *Muskegon Treasurer*, *id.* at ___; slip op at 10, this Court relied on the reasoning in *Nelson v City of New York*,

352 US 103, 110; 77 S Ct 195; 1 L Ed 2d (1956), to hold that, because the respondents did not avail themselves of the statutory means of recovering remaining proceeds, they did not suffer a compensable taking. The same reasoning applies in the present case. Claimants failed to avail themselves of a validly enacted, constitutional process for recovering remaining proceeds; therefore, they did not suffer a compensable taking.[5]

Our holding in *Muskegon Treasurer* speaks to both facial challenges and as-applied challenges to our Legislature's scheme for returning remaining proceeds. An FGU's compliance with the notice requirements in MCL 211.78 is essential to due process. See *Muskegon Treasurer*, ___ Mich App at ___; slip op at 8. The record in the present case raises questions about the level of petitioner's compliance with MCL 211.78's notice requirements. However, claimants' only argument about the inadequacy of the process was that it was not a postsale process. They have not argued that they did not receive notice of their right to claim an interest in remaining proceeds or sufficient time to submit Form 5743.

As an alternative basis for affirming the pay out of claimants' remaining proceeds, claimants urge this Court to conclude that the circuit court erred by not enforcing an alleged settlement agreement. The circuit court found, without elaboration, that the affidavit of claimants' attorney and the e-mails that the parties attached to their briefs did not establish an enforceable agreement. Claimants have given this Court no reason to disturb this ruling.

In conclusion, this Court held in *Muskegon Treasurer* that "[t]he statutory scheme set up by our Legislature and followed by petitioner satisfies due process." *Id.* This Court is bound by *Muskegon Treasurer*'s resolution of the issue. See MCR 7.215(J)(1). Therefore, we are compelled to conclude that the circuit court erred by ruling that presale notice of the right to claim remaining proceeds did not satisfy due process. On the basis of this error, the court further erred by concluding that petitioner's retention of claimants' remaining proceeds resulted in an unconstitutional taking. Claimants did not contend below, nor do they argue on appeal, that petitioner did not adequately comply with the Legislature's system for returning remaining proceeds. Therefore, we reverse the circuit court's order granting claimants' amended motion for the disbursement of remaining proceeds and remand the matter to the circuit court for entry of an order denying claimants' motion.[6]

---

[5] Given that disposition of this case rests on *Muskegon Treasurer*, we need not address whether the circuit court should have granted petitioner's motion for reconsideration on the basis of different arguments advanced by petitioner in her motion.

[6] Because claimants are not entitled to recover their remaining proceeds, they will not be subject to the 5% sales commission. Therefore, we need not address whether the sales commission is an unconstitutional taking. See *Muskegon Treasurer*, ___ Mich App at ___; slip op at 11.

Reversed and remanded.  We do not retain jurisdiction.

/s/ Brock A. Swartzle
/s/ James Robert Redford
/s/ Kathleen A. Feeney